FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

99 AUG 26 PM 3:31

U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHAEL CHRISTIANSON,          )
                               )
        Plaintiff,             )
                               )
vs.                            )    Case No. CV-92-PT-2374-M
                               )
TOM ALLEN, LARRY BURTON,       )
JULIAN VARNER, and RONNIE COOK,)
                               )
        Defendants.            )

ENTERED

AUG 26 1999

MEMORANDUM OPINION

This cause is before the court on the plaintiff's May 12, 1999, objections to the magistrate judge's report and recommendation filed April 27, 1999. The court has now conducted a *de novo* review of all the materials in the court file, including a tape recording of the evidentiary hearing before the magistrate judge, the exhibits offered and received at that time, as well as the report and recommendation and the objections to it.

Two findings of fact proposed by the magistrate judge are due to be corrected. At paragraph 2 of the report and recommendation, the magistrate judge found that plaintiff had filed a *pro se* application for rehearing of his direct criminal appeal, which was denied by the Alabama Court of Criminal Appeals on September 1,

1

1992. It now appeals more correctly that, although plaintiff **attempted** to file such an application for rehearing, it was never received by the Court of Criminal Appeals, which then issued a final certificate of judgment on July 1, 1992. Plaintiff did not discover this until August 1992. His petition for certiorari, filed in the Alabama Supreme Court on September 18, 1992, was stricken by that court on September 25, 1992, as failing to comply with the provisions of Rule 39 of the Alabama Rules of Appellate Procedure.[1] The magistrate judge's proposed finding that the petition for writ of certiorari was not denied until 1994 is erroneous.

In all other respects, the court ADOPTS and ACCEPTS the proposed findings of fact and conclusions of law as its own. The magistrate judge's ultimate conclusion that the limitations in the law book "call" system at the St. Clair Correctional Facility did not cause prejudice to the plaintiff's ability to litigate his claims is correct. The fact that the application for rehearing was not filed with or received by the Alabama Court of Criminal Appeals had nothing to do with the distribution of law books at the

---

[1] Although the Order of the Alabama Supreme Court does not say so explicitly, the petition apparently was stricken because plaintiff did not seek rehearing in the Court of Criminal Appeals as a precondition to seeking certiorari.

prison.² Similarly, the striking of plaintiff's petition for writ of certiorari was due to the non-filing of the application for rehearing, not deficiencies in the law-book distribution system. Even if plaintiff had received access to every book he could have wished for, the petition for certiorari would still have been stricken.

Similarly, plaintiff suffered no prejudice in any of his post-conviction petitions. He acknowledges that his first Rule 32 petition, although filed in the form of a petition for writ of error coram nobis, was treated as a Rule 32 petition and heard by the trial court. It was denied *on the merits* of his claim of ineffective assistance, not because of loss of his application for rehearing in the Court of Criminal Appeals. He argues that although he gave oral notice of appeal of the denial of the Rule 32 petition, his lack of access to a copy of the *Alabama Rules of Court* prevented him from knowing that he had to file a written notice of appeal. This assertion is undercut, however, by the copy of the letter dated April 12, 1993, attached to plaintiff's objections, in which he inquires about the status of his first Rule

---

² Plaintiff belatedly argues that defendant Ronnie Cook failed to mail the application for rehearing as an act of retaliation against plaintiff. The narrow issue remanded to this court by the Eleventh Circuit, however, was whether shortcomings in the law-book distribution system resulted in prejudice to plaintiff.

32 petition and asks for it to be consolidated with the second he filed in November 1992. Plainly, plaintiff did not know in April 1993 that the first petition had been denied by the trial court in October 1992, and, of course, he could not have given oral notice of appeal as to something he did not even know. The lack of appeal from the denial of the first Rule 32 petition, again, was not due to deficiencies in the law-book call system, but to the fact that plaintiff was not aware of its denial in time to take an appeal.

In short, limitations inherent in the law-book call system utilized by the St. Clair Correctional facility in 1992 and 1993 did not result in prejudice to plaintiff as that term is understood in <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed. 2d 606 (1996). While it is true that he experienced difficulty with his appeals and post-conviction petitions, none of those problems can be attributed to the manner in which these defendants administered the law-book call system for segregation prisoners. Judgment will be entered for the defendants.[1]

This _____ day of August, 1999.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] Attached hereto are pertinent excerpts from the evidence.

**Notes From Hearing Before Magistrate Judge Putnam**
**Michael G. Christianson v. Tom Allen, et al.**
**CV-92-PT-2374 M**

**Christianson - Opening**

Claims statute is violative of the Constitution both on its face and as applied.

Facial violation exists in the statute's failure to provide for any sort of legal assistance.

Application by defendants was unconstitutional in that they prevented him from receiving assistance and failed to provide him with law books as needed and requested.

**Mr. Howard**

Housed in segregation unit in 1992-93 for seven months and, apparently, again, at a later date for a longer period of time.

Officer Cook was law library coordinator/supervisor.

Requested materials from Cook. Had difficulties acquiring law books. Told Captain Varner. Cook did not know how to provide any assistance and generally came to segregation once a week.

Cook gave Christianson problems in assisting Howard. Claims that Cook, on one occasion, told Christianson that he would get no assistance while Cook was present and that he would have difficulty obtaining legal books. Called Cook's statements "threats." Some sort of verbal altercation took place. Cook visited the segregation unit several times on this date. This occurred on August 24, 1992.

Serving for Robbery 1 and other crimes.

Cook brought an inmate, Daniels, to segregation on the occasion of the altercation. Allowed Daniels to speak with Christianson for some short period of time (3-5 minutes). Claims Varner was responsible for allowing Daniels to come to segregation unit.

Claims that both he and Christianson have filed complaints about law library to Captain Varner about Cook's failure to assist inmates in the segregation unit.

**Mr. Heidelberg**

In segregation in 1992 at St. Clair.

Requested materials from law library in connection with post conviction appeal. Claims that lack of adequate supplies was one of the reasons for dismissal of his appeal. Cook made visits about once

a week (sometimes two or three times), would bring books, would notarize materials, and would take requests for legal materials. No legal assistance was provided for Heidelberg. Claims books were missing – Alabama Rules of Court, etc, but later admits that he has seen Alabama Code (contains Rules). Cook did not set up meetings with law clerks to talk to segregation inmates.

Burglary 3 conviction. Took direct appeal, handled by counsel. Does not know if another appeal was filed. Does not think so. He filed Rule 32 petition. Petition was dismissed.

Has never filed an action for lack of assistance at prison.

**Mr. Smith**

Housed in segregation in 1992 at St. Clair.

Attempted to file Rule 32 post-conviction petition. Had difficulties finding help and with accessing law books, despite the fact that Cook claimed that he would provide help.

Overheard Christianson requesting books from Cook on one occasion. Cook apparently gave Christianson some trouble in getting them.

Convicted of Robbery 2, Robbery 3, Escape, etc.

Never went to law library while in population. Claims he was only in population a short period of time. Did not go to library because he was going to court. Sought help in segregation – wanted assistance from someone. Claims that he submitted requests for law books and that it took a while to get them. Would not have understood the books and did not understand the books he received. Requested legal kits (claims 6 times) while in segregation, only received one. Claims that he needed actual assistance rather than just books in order to understand what to do.

His Rule 32 petition was filed by another inmate, who made errors. The errors caused it to be dismissed. The dismissal apparently had nothing to do with the difficulties he had in getting books.

**Mr. Nayberhart**

Housed in segregation in 1992 and 1993.

Requested legal materials while in segregation. Was doing a post-conviction. Cook would often fail to come to segregation with books and often did not bring the books he requested. Claims that Cook's visits were not made regularly.

Overheard conversation between Christianson and Cook. Claims that Cook referred during the conversation to a lawsuit he (Christianson) filed and refused to give Christianson a letter from Daniels.

Filed Rule 32 petition. Denied as not filed in timely manner and not filed according to procedural rules. Claims lack of assistance caused these inadequacies in his Rule 32 petition.

Requested Alabama Court Rules, did not receive them. Asked Cook for assistance. Cook told him to follow instructions in books.

Convicted for murder in September of 1991. Affirmed in 1992.

Filed grievances with Captain Varner and Lieutenant Hicks regarding failures in segregation legal services. Wanted assistance with legal matters from Cook or other inmates. Requested law books and did not always receive those books he wanted. Recalls that inmate Daniels would come around with Cook as a law clerk. Claims he was comfortable with Daniels providing advise with respect ot legal matters, as he had no choice and no better alternative. Does not know how much training Daniels has in the law. Affidavit claims that Daniels and Christianson corresponded by letter. Generally, Daniels was not given enough time by Cook in segregation to provide meaningful legal advice and assistance – usually only a couple of minutes at most. Often, Daniels would not have any time at all to provide assistance.

### Mr. O'Barey

Housed in segregation in 1992 and 1993.

Requested books, etc. while housed in segregation. Had difficulties in obtaining law books or notary services. Generally, he would receive only a small percentage of the books he requested, as they were often out. Claims he would have to call out windows to Varner or Hicks for him to get services. Cook failed on several occasions to appear and failed to provide some books as requested or assistance. Claimed notary services were not made available on a regular basis, but that his complaints were always answered with assistance.

Filed 2254. Failed in his attempt because he was unable to continue as a result of his lack of knowledge. Cook brought Daniels, a law clerk, to him, but did not give the clerk enough time to give him any information. Claims that he was given no legal assistance.

Cook would deliver one week and would then not show up the next week. This would lead to arguments with inmates, as they had been unable to request books.

Sentenced for Kidnapping 2 in 1983. Appealed, trial counsel handled direct appeal. Handled appeal to Alabama Supreme Court himself.

Claims lack of knowledge led to the dismissal of his appeals.

Sought advice from Christianson.

Has filed grievances regarding books, etc. His verbal complaints to Varner were always answered with some form of action.

Tom Allen - Associate Commissioner for Classification. Provided no advice to him about how he could get out of segregation. Claims that Allen told him that he (Barey) would never get out of segregation. Had no responsibility for law library at St. Clair. Does not work on a day to day basis at St. Clair.

**Mr. Daniel**

Employed as inmate law clerk in 1992 and 1993 at St. Clair. No qualifications to be law clerk at St. Clair. No abilities required.

Inmate law clerks were not allowed to provide advice to inmates in segregation in connection with their legal claims prior to communications with Christianson. Went to segregation unit with Cook with intent to assist Christianson. Generally, assistance is not the purpose of law clerks accompanying Cook to segregation. Cook hinted that he was not to provide the assistance, despite the fact the he thought that was the purpose of the visit. Spent no more than five minutes during the first visit speaking with Christianson. Tension existed between Cook and Christianson. Cook was not apparently inclined to held Christianson, as the two were involved in an ongoing dispute of some sort. Only went to segregation on a couple of occasions. Never spent more than a couple of minutes at a time speaking with Christianson about legal matters.

Knows of multiple grievances filed by Christianson. Such grievances might have been the reason he was sent to segregation.

Access for segregation prisoners to the law library books has not, as far as he knows, changed since 1992-93.

Convicted of two counts of Robbery. Affirmed by court of appeals in 1992. Tried case before jury with standby counsel. Got appeals court to set bond. Spent considerable time in law library of county jail and in St. Clair.

Books available at St. Clair: F.Supp., Federal Reporters, U.S. Reports, Case Name Citators, Alabama Digest, Alabama Reporter, Shepherds (Fed. and State), Prisoners Litigation Manuals, forms manuals, most updated pocketparts, but many were missing cases/pages. If case/pages are missing, there is a procedure for getting them, but he has never seen it in action.

Does not know what the limitations on taking books to segregation were.

Other law clerks names: Jeffery Bell, Willy Jones, Michael Russ, Bobby Miles, another one. Does not know about the extent of their legal training.

Was not aware that Christianson filed civil action against his trial counsel.

Knew that Christianson's application for rehearing was not received by Supreme Court. Does not recall if he advised Christianson to file the application.

**Mr. Christianson**

Decries inconsistency of law book runs.

Claims he was given little or no legal assistance, as Daniels was not allowed to give him any real help beyond some typing. Only help he was given was as a result of his grievances. Claims that Cook prevented him from getting any help and prevented him from getting books he needed. Argues that Cook was perpetually hostile and retaliatory toward him.

Claims that Prison Regulation 433 is unconstitutional in that it does not provide for any legal assistance, and allows only two books at a time. When deficiencies in Regulation are added to hostility of Cook, who was responsible for giving them books and assistance, situation was made unbearable. Cook's actions actually prevented him from getting the books that even the statute entitled him to.

Claims that there was a separate law library that segregation unit prisoners could have used but were not allowed to use.

Warden Burton and Captain Varner allowed Cook to continue as law library officer despite the grievances filed by Christianson and others and despite Cook's alleged substance abuse problem.

Argues that the denial of adequate law books by Cook and others caused his cases/appeals to be dismissed. Claims that cases require prisons to allow for or provide for assistance.

Cook was eventually terminated for having alcohol on his breath in connection with his (Cook's) having failed to make a law book run. Christianson claims that officials were aware of his problem well before his termination (in 1995?).

Claims that (1) Cook interfered with his access to materials and (2) that this denial prejudiced him in that his writ of certiorari was denied because of procedural inadequacies that existed as a result of his failure to get a copy of the Alabama Rules of Court.

Claims Reg 433 violates Bounds v. Smith and Lewis v. Casey.

Government notes that most issues raised in Christianson's Rule 32 and direct appeal were not raised at trial and that his counsel, therefore, prejudiced his rights. Thus, his ineffective assistance of counsel claim was untimely.

Page -6-

Christianson received Prison Litigation Manual in 1993 from a publisher and received a book on post-Conviction procedures from a publisher. Was not prevented from receiving them.

As far as he knows Varner and Burton never prevented him from doing what he was trying to do and never made any attempt to do so. Claims that Varner and Burton did nothing to prevent Cook's hostile actions. Apparently, however, Varner and/or Burton did get Cook to allow Daniels in to talk to Christianson.

Found out he had to file an appeal after his first direct appeal within a finite amount of time from an inmate. Also got a letter from his attorney telling him that he would no longer handle the case and that he had to file an application for rehearing by a certain date (June 26?). Filed that application in a timely manner (June 22?). Wrote it out in longhand. Filed another pleading with court pursuant to Rule 27 in August of 1992. Typed by Daniels. Petition for certiorari filed on September 16 by Christianson, notarized by Cook. Claims it was denied because he did not file it according to the procedural rules. Claims writ may not have been denied if he had obtained access to books.

Claims he asked Allen for books during status review meeting. Deposition states that he never discussed such problems with Allen. He says his deposition testimony was incorrect.

Claims that all of his law books were taken from his cell at some point.

**Captain Varner**

Carried roster lodging complaints from segregation unit prisoners, would seek action on the complaints. Made rounds regularly, mainly for the purpose of fielding complaints.

Reg only requires prisoners to have access to books. Claims that visits were made by Cook and law clerks to segregation unit were made at least twice a week to deliver books and take orders for books. Cook was to deliver legal kits and was responsible for delivery of books. Claims that the supply of legal supplies was ample. Letters were picked up on daily basis from prisoners and sent out every day.

Daniels was allowed to talk to Christianson because Christianson specifically requested that he be able to do so. Varner notified Cook that Daniels should be allowed to help Christianson.

Received complaints from Christianson that Cook was not making his law book rounds. Logs indicated that he had been doing so, or that he had, at a minimum, visited the segregation unit with that purported purpose. Never received complaints regarding the failure of letters to be mailed out. Never heard of an inmate losing an appeal/claim as a result of the lack of access to books.

Services, including notary or book delivery, were generally rendered to prisoners as they needed or requested and on a regular basis. Deliveries were made two to three times a week, usually by Cook. If Cook was not available, someone else would go.

Claims Cook had good knowledge of the law and that staff and inmates had used his knowledge to their benefit on numerous occasions.

Inmates allowed one telephone call per month. Varner approved additional calls for him.

Allen has no authority or responsibility for allowing access to law books.

Knew that Cook had alcohol problem but was under impression that he had sought treatment and was still in recovery. Saw no evidence of the problem during 1992-93. Claims that he had nothing to do with Cook's dismissal.

Christianson was the only prisoner to make repeated complaints about the failure of Cook to make book deliveries.